Jack Gordon GREENE *v.* STATE of Arkansas

CR 02-736 146 S.W.3d 871

Supreme Court of Arkansas
Opinion delivered February 12, 2004
[Rehearing denied March 25, 2004.]

*Jeff Rosenzweig,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

BETTY C. DICKEY, Chief Justice. Appellant Jack Gordon Greene was convicted in Johnson County Circuit Court of the capital murder of Sidney Jethro Burnett and was sentenced to death in 1992. This court affirmed the conviction for capital murder but reversed and remanded for resentencing because the North Carolina Supreme Court had reversed a previous murder conviction, which the Arkansas trial jury had considered as an aggravating circumstance. *Greene v. State,* 317 Ark. 350, 878 S.W.2d 384 (1994) (*Greene I*). In 1996, Greene was again sentenced to death and this court again reversed and remanded for resentencing because (1) the State had not offered proof that Greene's bad act in North Carolina constituted a felony under North Carolina law, and (2) Greene was entitled to a hearing relating to his objections to his mental evaluation. *See Greene v. State,* 335 Ark. 1, 977 S.W.2d 192 (1998) (*Greene II*). On remand, Greene was sentenced to death and this court affirmed. *Greene v. State,* 343 Ark. 526, 37 S.W.3d 579 (2001) (*Greene III*). Appellant then filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37. The trial court denied the petition without a hearing. From that order Greene now appeals, asserting seven points on appeal, none of which has merit. We affirm the order of the trial court.

Appellant alleges two procedural and five substantive errors: (1) the trial court's order denying postconviction relief fails to comply with the written findings requirement of Rule 37; (2) the trial court erred in failing to conduct a hearing on the petition; (3) trial counsel was ineffective for failing to seek live testimony in the penalty phase instead of submitting transcripts; (4) trial counsel was ineffective for failing to object to State's closing argument; (5) trial counsel was ineffective for failing to make a proper objection to an improper interpretation of Arkansas law; (6) trial counsel was ineffective for failing to challenge the testimony of the medical examiner; and, (7) trial counsel was ineffective for failing to make a constitutional objection to introduction of a T-shirt inscribed "If you love someone, set them free. If they don't come back, hunt them down and shoot them."

64

## Standard of Review

 The standard of review for claims of ineffective assistance of counsel is well settled in Arkansas. This court has recently stated:

> In reviewing a claim of ineffective assistance of counsel, the reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *McGehee v. State*, 348 Ark. 395, 72 S.W.3d 867 (2002); *Thomas v State*, 330 Ark. 442, 954 S.W.2d 255 (1997). To rebut this presumption, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., that the decision reached would have been different absent the errors. *McGehee, supra.* A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. Id. In determining a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Chenowith v. State*, 341 Ark. 722, 19 S.W.3d 612 (2000). This court will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Greene v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000). To prevail on a claim of ineffective assistance of counsel, Scott must show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors, the result of the trial would have been different. *McGeHee, supra; Kemp v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

*Scott v. State*, 355 Ark. 485, 139 S.W.3d 511 (2003).

## I. Written Findings under Rule 37

 Appellant claims that the trial court's order fails to comply with the "written findings" requirement of Rule 37, which has two separate provisions that deal with petitions where the trial court does not hold a hearing. These rules state in pertinent part:

> 37.3(a) If the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief, the trial court shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings.

> 37.5(i) *Decision.* If no hearing on the petition is held, the circuit court shall, within one hundred twenty (120) days after the filing of

the petition, make specific written findings of fact with respect to each factual issue raised by the petition and specific written conclusions of law with respect to each legal issue raised by the petition.

Ark. R. Crim. P. 37.3, 37.5 (2003). This court has recently reconciled these two rules and their relative case law. *See Sanders v. State,* 352 Ark. 16, 98 S.W.3d 35 (2003).

Prior to the enactment of Rule 37.5, Rule 37.3 covered cases where the death penalty was imposed. *Wooten v. State,* 338 Ark. 691, 1 S.W.3d 8 (1999). Under Rule 37.3(a), the trial court is required to make written findings specifying any part of the files or records that are relied upon to sustain the court's findings. Ark. R. Crim. P. 37.3(a) (2003). This court has held it can affirm a trial court's order notwithstanding the failure to comply with Rule 37.3(a), if it can be determined from the record that the petition is wholly without merit, or where the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted, even in death cases. *Wooten, supra; see also Bohanan v. State,* 327 Ark. 507, 939 S.W.2d 832 (1997).

Rule 37.5 mandates that the trial court make "specific written findings of fact with respect to each factual issue raised by the petition and specific written conclusions of law with respect to each legal issue raised by the petition," but the Rule does not require the trial court to specify any parts of the files or records that are relied upon to sustain the court's findings. This court has explained that in death cases covered by Rule 37.5, it will remand a case when the trial court fails to make sufficient written findings of fact and conclusions of law. *Echols v. State,* 344 Ark. 513, 516, 42 S.W.3d 467, 470 (2001)(postconviction claims are governed by Rule 37.5, which provides the postconviction procedure to be applied in death-penalty cases for defendants who became eligible to file a Rule 37 petition on or after March 31, 1997).

In *Sanders v. State,* 352 Ark. 16, 98 S.W.3d 35 (2003), this court said when a trial court makes written findings of fact and conclusions of law as required by Rule 37.5, but fails to specify the parts of the record that form the basis of the trial court's decision under Rule 37.3(a), we will still affirm if the record conclusively shows that the petition is without merit. *Id.*

The appellant contends the trial court's order is deficient in the following ways:

The order (i) does not cite the files or records used to sustain the court's findings; (ii) does not make specific findings of fact; (iii) omits some conclusions of law; and, (iv) does not assert that the petition and the files and records of the case conclusively show that the petitioner is entitled to no relief.

The State contends the order issued by the circuit court complies with the mandates of Rule 37. We agree. The trial court's order specifically addressed each argument presented by Greene independently with a finding of relevant facts and conclusions of law. The allegations of ineffectiveness were legal in nature, therefore, the trial court had no duty to cite to files or records used in making its findings. Appellant fails to explain which conclusions of law are missing. Finally, Greene seems to assert that the trial court must certify the "petition and the files and records of the case conclusively that show the petition is entitled to no relief." Rule 37 makes no requirement of certification. We conclude that the trial court's order is sufficient for this court to review.

## II. Rule 37 Hearing

In his second point, Greene claims that the trial court should have conducted a hearing on his petition. We disagree. This court recently addressed a petitioner's right to an evidentiary hearing in a death-sentence case, *Sanders v. State,* 352 Ark. 16, 98 S.W.3d 35 (2003), where we explained that Rule 37.3 clearly grants the trial court discretion to decide whether the files and records are sufficient to address the petition without a hearing. We have previously interpreted Rule 37.3 to "provide that an evidentiary hearing should be held in a postconviction proceeding unless the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*

We have acknowledged that due to the finality of the punishment, death-penalty cases are different than other criminal cases. *Id.* However, this court has recognized that the trial court is not required to hold an evidentiary hearing, even in death-penalty cases. *Id.; Nance v. State,* 339 Ark. 192, 4 S.W.3d 501 (1999). The trial court need not hold an evidentiary hearing where it can be conclusively shown on the record, or the face of the petition itself, that the allegations have no merit. *Sanders, supra.* Moreover, conclusory allegations that are unsupported by the facts do not provide a basis for either an evidentiary hearing or post-

conviction relief. *Hayes v. State,* 280 Ark. 509, 660 S.W.2d 648 (1983). A Rule 37 hearing is not available to a petitioner in hopes of finding grounds for relief. *Id.*

### III. Use of Trial Transcripts

After Greene was initially sentenced to death, we affirmed his guilt but reversed his death penalty for a new hearing. *Greene I, supra.* After being resentenced to death, we again found error in the proceedings and reversed Greene's death penalty for a new hearing. *See Greene II, supra.* At his rehearing, Greene's counsel submitted transcripts of prior testimony as mitigating evidence pursuant to Ark. Code Ann. § 5-4-616(a)(4) (Repl. 1997). Greene now argues that counsel's decision to use the transcripts and failure to seek live mitigating testimony constituted ineffective assistance of counsel. The trial court ruled that counsel's decision was a matter of trial strategy and that there was no reasonable probability that live testimony would have resulted in a different result. That ruling was not clearly erroneous, and we affirm.

Greene argues that he was clearly entitled to the physical presence of mitigation witnesses by virtue of his Sixth Amendment right of compulsory process, along with the analogous state guarantees in Article 2, § 10, of the Arkansas Constitution and the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, codified at Ark. Code Ann. § 16-43-401-409 (Repl. 1999). Counsel suggests that "[h]ad counsel made the proper request, it would have been granted or the sentence would have been summarily reversed." Then, Greene explains the substance of the mitigating testimony submitted by transcript and the jury's conclusions with respect to aggravating and mitigating circumstances. Nevertheless, after trumpeting the constitutional guarantees, Greene concedes that trial counsel was permitted to use the transcripts, but contends that counsel should not have made that choice.

It is clear that in Arkansas, matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Simpson v. State,* 355 Ark. 294, 138 S.W.3d 671 (2003). In Greene's second punishment hearing, the testimony from his mitigation witnesses was elicited with virtually no cross-examination by the State. In preparing the mitigating evidence for Greene's third punishment hearing, coun-

sel may have considered the potential that the State would more vigorously cross-examine the mitigation witnesses. Of particular note was the State's prior inability to cross-examine the witnesses concerning allegations that Greene murdered his brother in North Carolina.

Furthermore, the record reflects that counsel did attempt to secure live testimony. Specifically, counsel filed a motion to subpoena ten out-of-state witnesses pursuant to Ark. Code Ann. § 16-43-403. The jury unanimously found that two mitigating circumstances probably existed, and mitigating evidence presented by Greene's counsel was clearly considered by the jury without the live testimony.

 Greene has failed to meet the first prong of the *Strickland* test requiring a showing that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, it cannot be said that, had the jury heard live testimony from the witnesses, the outcome of the hearing would have been different. Furthermore, mere errors, omissions or mistakes, improvident strategy or bad tactics will not suffice to require an evidentiary hearing. *Hayes v. State*, 280 Ark. 509, 660 S.W.2d 648 (1983).

### IV. Failure to Object During Closing Argument

 In closing arguments at Greene's final sentencing hearing, the State asked the jury to send a message. The prosecutor stated:

> If someone comes into our community from off somewhere and does this to one of our citizens, I think we should tell them, "You get the maximum penalty here." Giving the maximum penalty discourages and deters other people from doing things like this to sixty nine year old retired ministers in Johnson County.

Greene's counsel did not object to this argument at trial. Now Greene says the prosecutor's argument was an improper expression of personal opinion, a violation of his due-process and fair-trial rights, and a violation of his constitutional right to travel. In denying postconviction relief, the trial court denied the claim citing trial strategy and noted that "[s]ome lawyers might refrain from objection to prevent additional attention begin [sic] drawn to the argument, while others

might feel it necessary to obtain a ruling by the trial court." The trial court concluded that counsel's conduct fell within the range of permissible legal conduct and that Green failed to demonstrate any prejudice by the State's argument or counsel's failure to object. Ordinarily, the failure to object during closing argument is within the wide range of permissible professional legal conduct. *Lee v. State,* 343 Ark. 702, 38 S.W.3d 334 (2001). This court has held that experienced counsel in any case could disagree to the influence a particular closing argument had on the jury's verdict. *Id.* Before petitioner can prevail on an allegation that counsel was wrong in not objecting during closing argument, he must establish that he was denied a fair trial by the failure to object. *Id.*

Greene's argument that he was denied a fair trial by counsel's failure to object is followed by an allegation that the State's closing comments aroused the passion and prejudice of the jury by unconstitutionally characterizing him as "an outsider." For support of this claim, Green cites to *United States v. Cruz-Padilla,* 227 F.3d 1064 (8th Cir. 2000), where the Eighth Circuit Court of Appeals held that the State improperly tied an allegation that the defendant was a liar to her status as an illegal alien. *Id.* The court explained that the Constitution prohibits racially biased prosecutorial arguments. *Id.* Here, the prosecutor did not draw on Greene's ethnicity. The prosecutor's statement only identified that Greene was not from Johnson County. However, unlike the prosecutor in *Cruz-Padilla,* the prosecutor in this case did not link Greene's place of residence to a propensity to lie or commit a crime.

Below is the "overwhelming evidence of guilt" noted in *Greene I:*

> The facts show that appellant knew the Burnetts and was familiar with their home. He went to their home with handcuffs, a .25 caliber pistol, and filament tape. He bound Sidney Burnett's hands, feet, and mouth. Over a period of time, appellant beat Burnett in the head, probably with a can of hominy; bruised his back, probably by stomping him with his heel; brutally stabbed him in the back; committed even more horrible torture when he cut the victim from mouth to ear; and ultimately shot him in the chest and in the head. Even though this description of butchery and torture sounds horrible, it does not fully describe the effect of macabre horror shown in the photographs of the crime scene. Appellant said, "I'm tired of being treated like shit. I was going to take out

people that fucked with me. It's like chaining up a dog and treating it like shit. Sooner or later he goes crazy."

The evidence of a premeditated and deliberated murder is overwhelming, and, under such circumstances, the trial error was harmless. Consequently, we affirm the conviction for capital murder reached in the first phase of the trial.

*Greene I* at 357–378, 878 S.W.2d at 389. Given the above evidence, appellant cannot show that he was prejudiced by counsel's decision not to object. The failure to make a meritless objection is not ground for ineffective assistance of counsel. *Jackson v. State,* 352 Ark. 359, 105 S.W.3d 352 (2003).

The prosecutor's comments were nothing more than a call to the jury to enforce the law, which is permissible. *See Muldrew v. State,* 331 Ark. 519, 524, 963 S.W.2d 580, 582–83 (1998). In *Muldrew,* appellant argued that the prosecutor appealed to the jury's passions by improperly including in his closing statement a "send a message" theme. *Id.* at 523, 963 S.W.2d at 582. This court has continually affirmed the State's ability to use a "send a message" theme in closing arguments. *Muldrew* at 524, 963 S.W.2d at 582; *See Lee, supra.*

Greene contends that the remarks also violated Rule 3.4(e) of the Model Rules of Professional Conduct which states that a lawyer shall not, in trial, state a personal opinion as to the justness of a cause, the credibility of a witness, or the. guilt or innocence of an accused. However, Greene fails to cite authority that holds a prosecutor's statement to "send a message" violates the Model Rules of Professional Conduct. Such a holding would be contrary to this court's approval of such statements. *Lee, supra.* Furthermore, Greene fails to explain how an alleged violation of the Model Rules of Professional Conduct translates into ineffective assistance of counsel. Without citation to authority or convincing argument, we do not consider claims of error made on appeal. *Scott v. State,* 355 Ark. 485, 139 S.W.3d 511 (2003); *See Kelly v. State,* 350 Ark. 238, 85 S.W.3d 893 (2002); *Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002).

*V. Failure to Object to Comment Regarding Appellant's Possible Release from Prison*

During closing arguments, in pleading for the jury to sentence Greene to life imprisonment, his counsel argued that a life

sentence would keep Greene from ever getting out of prison. The State objected, arguing that Greene could be released pursuant to commutation, pardon, or reprieve of the Governor. This court addressed the colloquy in *Greene III* as follows:

> Greene next contests a comment made by the prosecuting attorney regarding the potential for Greene's release should he be sentenced to life in prison without the possibility of parole. The sequence of events and the colloquy between the judge and counsel follows:
>
> > DEFENSE COUNSEL: He's exhibited remorse for the death of Sydney Burnett....I think Mr. Wilson argued that, "Well, he's in prison over this thing now." Well, he's in prison. He's not getting out. He's never getting out of Tucker Maximum Security Unit at Tucker, Arkansas.
> >
> > PROSECUTOR: Judge, I'm going to object to that. That's misleading to the Jury.
> >
> > THE COURT: The Jury has heard the evidence. If Counsel misquotes the evidence, they can disregard it.
> >
> > PROSECUTOR: I'm talking about the situation about not getting out of the penitentiary. That's not the law and it's misleading.
> >
> > THE COURT: Well, I'll sustain that.
> >
> > PROSECUTOR: Thank you, sir.
> >
> > DEFENSE COUNSEL: Well, I would submit then that the only way he would ever get out would be a Governor's Pardon, if that helps Mr. Prosecutor Wilson.
> >
> > PROSECUTOR: Well, Judge, it doesn't. The law is clear that he maybe released pursuant to commutation, pardon or reprieve of the Governor.
> >
> > THE COURT: That's correct.
> >
> > PROSECUTOR: Thank you, sir.

*Greene III*, 343 Ark. at 539, 37 S.W.3d at 588. According to this court:

Greene's counsel made no objection to this colloquy but now contests the prosecutor's summary of the law for the first time on appeal. As authority, counsel cites *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and directs our attention to the exception to our contemporaneous rule relating to a trial court's duty to intervene and correct a serious error. Absent the trial court's intervention, Greene claims that he was highly prejudiced. We disagree that the trial court had a duty to step in under *Wicks*, because in our view no serious error was made. Indeed, the prosecutor correctly quoted the law. The apposite statute reads:

> A person sentenced to life imprisonment without parole shall be remanded to the custody of the Department of Correction for imprisonment for the remainder of his life and shall not be released except pursuant to commutation, pardon, or reprieve of the Governor.

Ark. Code Ann. § 5-4-606 (Repl. 1997). This point has no merit. *Greene III,* 343 Ark. at 539-540, 37 S.W.3d at 588.

Greene now submits that counsel at the sentencing hearing was ineffective for failing to object, and that appellate counsel was ineffective in failing to properly frame the *Wicks* exception. Nonetheless, Greene concedes that the court would have to overrule its decision in *Greene III* that prosecutor's comments were proper.

Greene cites two cases to support his contention that the prosecutor's statements were improper and to persuade this court to overrule its decision in *Greene III*. In *Simmons v. South Carolina,* 512 U.S. 154 (1994), the United States Supreme Court found error in the trial court refusing to instruct the jury consistent with the law that a sentence of life imprisonment, as an alternative to the death sentence, did not include the possibility of parole. In *Caldwell v. Mississippi,* 472 U.S. 320 (1985), the United States Supreme Court held that it was constitutionally impermissible to rest a death-sentence determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests on an appellate court. Here, no such assertion was made by the State These cases are inapposite and do not relate to the State seeking to inform the jury of the full status of the law.

In ruling that Greene's claim had no merit, the trial court cited *Hill v. State,* 347 Ark. 441, 65 S.W.3d 408 (2002). In *Hill,* appellant claimed that trial counsel was ineffective for failing to

appeal the trial court's denial of a proffered jury instruction informing the jury that Hill would not be eligible for parole if he were sentenced to life imprisonment without the possibility of parole. This court held:

> [T]he trial court was on sound ground in rejecting the proffered parole instruction, which contemplated an absolute prohibition against parole, since the governor could always commute a sentence of life imprisonment without parole. Because this court has held that there is no error in refusing an instruction which may have misled or confused the jury, see *Townsend v. State,* 308 Ark. 266, 824 S.W.2d 821 (1992), counsel would not have been ineffective for failing to raise such an issue on appeal.

*Id.* at 452, 65 S.W.3d at 416. Hill also cited *Simmons* in support of his argument; however, this court found that the circumstances in *Simmons* were "manifestly not the same as what occurred at resentencing [in *Hill*]." *Hill* 347 Ark. at 452, 65 S.W.3d at 416.

 In *Simmons,* the trial court refused to inform the jury that state law prohibited the defendant's release on parole, whereas in *Hill,* the trial court specifically instructed the jury that, if they did not sentence Hill to death, they would sentence him to life imprisonment without parole. According to this court, "[t]he fact that the life imprisonment was without parole was specifically communicated to the jury." *Id.* The same is true in this case. Given this court's holding in *Hill,* there was no basis upon which to make an objection. Counsel cannot be ineffective for failing to make a meritless argument. *Sandford v. State,* 342 Ark. 22, 28-29, 25 S.W.3d 414, 420 (2000). In sum, this court has already ruled on the propriety of the prosecutor's statements, and Greene now unsuccessfully attempts to have that decision reviewed and overruled.

### VI. Failure to Impeach the State Medical Examiner

 For his fourth point of substantive error, Greene contends that trial counsel was ineffective in failing to challenge the testimony of Dr. Malak concerning aspects of death. At his third sentencing hearing in 1998, the State used deposition testimony of Dr. Fahmy Malak taken in 1992. In *Greene III* this court held that Ark. Code Ann. § 5-4-616(a)(4) entitled the State to use the testimony. The substance of Greene's Rule 37 argument is that counsel was ineffective for failing to impeach Dr. Malak in light of

other evidence that Dr. Malak had a history of controversial and inaccurate determinations. Greene adds that there is a reasonable probability that another examiner would have disagreed with Dr. Malak's conclusions. Nonetheless, neither Greene's Rule 37 petition, nor his argument on appeal identify a doctor that would have disagreed with Dr. Malak, or even the evidence that would indicate Dr. Malak's determinations were faulty and subject to different interpretation. When an allegation rests on whether a witness should have been called, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Malone v. State,* 294 Ark. 127, 132, 741 S.W.2d 246, 249 (1987).

■ Greene fails to cite one piece of authority for the proposition that counsel was ineffective in this case. Greene merely makes conclusory allegations that there may have been some medical examiner that would have disagreed with Dr. Malak. Conclusory statements cannot be the basis of postconviction relief. *Jackson v. State,* 352 Ark. 359, 105 S.W.3d 352 (2003). This court will not grant postconviction relief for ineffective assistance of counsel where the petitioner fails to show what the omitted testimony or other evidence was, and how it would have changed the outcome. *Id.* In the absence of any showing of what the evidence concerning Dr. Malak's examination might have proven, this court affirms.

### VII. Failure to Make a Constitutional Objection to the Introduction of a T-shirt

Greene's final argument is that original trial counsel was ineffective in failing to frame a constitutional objection to the t-shirt having the inscription, "If you love someone, set them free. If they don't come back, hunt them down and shoot them." At trial, Greene's counsel objected to the admission of the t-shirt arguing that it was irrelevant and unduly prejudicial. The trial court admitted the t-shirt over Greene's objection. Although the objection was overruled, this court held the trial court's error to be harmless and refused to reverse appellant's conviction. *Greene I,* 317 Ark. at 335, 878 S.W.2d at 387. According to this court, "after a detailed review of the evidence, we hold that the evidence of guilt of capital murder was overwhelming, and, in view of that evidence, the error was slight." *Id.*

Now Greene argues that counsel should have objected on the grounds that the admission of the t-shirt violated the First and Fourteenth Amendments. According to appellant, even if the trial court had overruled such a constitutional objection, this court would have found constitutional error had occurred, using a "different, stricter standard" pursuant to *Chapman v. California,* 386 U.S. 18 (1967). In denying postconviction relief, the trial court noted this court's ruling in *Greene I* and stated it could not conclude that, had counsel made a constitutional objection, a different result would have been reached by the jury. Greene is correct that the United States Supreme Court held that before a federal constitutional error can be declared harmless the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Id.* Greene is also correct that this court did not hold that the admission of the t-shirt was "harmless beyond a reasonable doubt." However, Greene has failed to indicate what federal constitutional error arose out of the admission of the t-shirt.

Greene now argues that the inscription of this t-shirt was protected under the First Amendment to the United States Constitution. Nonetheless, it is unnecessary to analyze the doctrine of free speech in this context. Greene makes no assertion that the evidence which constitutes free speech is inadmissible at trial. The United States Supreme Court has concluded that the First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive of intent. *Wisconsin v. Mitchell,* 508 U.S. 476 (1993). Therefore, Greene's argument is meritless. Accordingly, the trial court's ruling is affirmed.

Affirmed.